**NOT FOR PUBLICATION OR CITATION**

Eastern District of Kentucky
F I L E D

SEP 0 1 2005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-CV-234-JMH

ABIODUN BASHORUN                                                     PETITIONER

VS:                    **MEMORANDUM OPINION AND ORDER**

WARDEN JOE BOOKER, et al.                                  RESPONDENTS

Abiodun Bashorun, an individual incarcerated in the Federal Correctional Institution (FCI) in Lexington, Kentucky, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2241.

This matter is now before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).[1]

<u>CLAIMS</u>

The petitioner seeks removal of a detainer which has been lodged against him for later immigration proceedings on the grounds that (1) its issuance is erroneous because he is a national of the United States, not an alien; (2) the effect of the detainer is to bar him from Bureau of Prisons ("BOP") programs which could be helpful generally and in qualifying him for early release

---

[1] This is a *pro se* action and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).

1

specifically; and (3) if he is deported, he will be subjected to double jeopardy, cruel and unusual punishment, and a miscarriage of justice.

ALLEGATIONS OF THE PETITION

The following is a summary or construction of the petitioner's allegations, as presented in his completed petition form, 10-page typed memorandum, and numerous attached exhibits. Record No. 1.

The petitioner came to this country from Nigeria on August 10, 1984. He attaches some of his processing papers and other documents evidencing his assimilation into the United States, including his Selective Service Registration; confirmation that he served in the Persian Gulf conflict from August 2, 1990, to April 11, 1991; glowing work reports; and several forms and receipts, from 1992 to 1994, which purportedly show that he applied and fulfilled various requirements for obtaining U. S. citizenship, although none actually states the outcome, *i.e.*, citizenship. Exhibits [hereinafter "Ex."] A, B-1 to B-9.

The petitioner explains that he is currently in the custody of the BOP in service of a federal sentence. On July 24, 1998, he was convicted of conspiracy to launder monetary instruments in violation of 18 U.S.C. §1956, in the United States District Court for the Northern District of Maryland, and he was sentenced to 135 months' imprisonment. He has a projected release date, *via* Good Conduct Time, of November 29, 2007 (Ex. 5). The petitioner states that after he began service of his sentence, on August 26, 1998, the Immigration and Naturalization Service (INS)[2] lodged a

---

[2]     After the terrorists' attacks on the United States on September 11, 2001, the INS was abolished. Its immigration enforcement functions transferred to the Bureau of Immigration and Customs Enforcement ("BICE") in the newly created Department of Homeland Security. The change does not, however, affect the detainer, the law quoted herein, or the instant cause of action.

detainer against him with prison authorities. The petitioner provides a copy of the INS detainer, which is actually dated April 25, 2001. It recites his 2007 projected release date and advises the BOP as follows: "Investigation has been initiated to determine whether this person is subject to removal from the United States." Ex. A.

The petitioner alleges that it was not until 2002 that he learned of the detainer, and he attaches a copy of an October 4, 2002 letter which he purportedly wrote to the INS's Oakdale, Louisiana office, which lodged the detainer. Ex. 3. In it, Bashorun explains, as he does herein, that he applied for citizenship in 1994, passed a written examination, and was congratulated. He claims herein that he has still not received any response from the INS.

In 2005, the petitioner filed a request to staff to complain of the lodging of the detainer and its effect on his eligibility for several prison programs, which he lists specifically. The staff member's response was that Bashorun's Presentence Report showed him to be a permanent resident; nothing in the Report indicated his having become a citizen; and he should contact the Oakdale facility about his immigration documents. Ex. 2.

One month later, Bashorun filed the instant petition and its attachments. Additional exhibits go to the equities involved, including Petitioner's five children, who are citizens; his excellent employment in this country; the completion of numerous prison programs; and his claims that his deportation to Nigeria would subject him to conditions which would be unconstitutional in this country. The petitioner seeks to have the detainer removed.

DISCUSSION

The instant petitioner is making all of his arguments prematurely or in the wrong forum. Petitioner Bashorun is serving a criminal sentence attendant to his 1998 conviction. He cannot

3

present his claims, as set forth above, to challenge the INS's actions prior to coming into INS custody. The law is well established that a prisoner cannot challenge an immigration detainer until he has actually passed into INS custody.

This is so for several reasons. First, by its very term, §2241 relief is available only if the petitioner's current "custody [is] in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3). Additionally, an INS detainer only constitutes a notice that the INS may seek custody of the prisoner in the future; it does not confer custody to the INS. *See Kendall v. INS*, 261 F.Supp.2d 296, 300-01 (S.D. N.Y) (noting the petitioner's lawful permanent resident status, characterizing his challenge to the INS detainer as being "obviously premature," and citing cases supporting its conclusion, including *Roldan v. Racette*, 984 F.2d 85, 88 (2nd Cir. 1993); *Campillo v. Sullivan*, 853 F.2d 593, 595 (8th Cir. 1988); and *Prieto v. Gluch*, 913 F.2d 1159, 1162-64 (6th Cir. 1990)). *See also Hernandez v. Lindeman*, 2002 WL 31163074 (D. Minn. 2002) (unpublished) (same; also relying on *Campillo*, 853 F.2d at 595).

Because a detainer is only a notice and does not alter the instant prisoner's status as a custodial detainee of the federal prison system, he "may not challenge the detainer by way of habeas corpus until he is placed in the custody of the INS, an event which will not occur until [he] is released from his present term of confinement." *Campillo*, 853 F.2d at 595. The instant cause of action, therefore, must be dismissed for the reasons aforestated. Only at a later time, when and if he has passed into INS custody, may the petitioner make his arguments for citizenship and against returning to Nigeria in the deportation proceedings themselves.

With regard to the impact of the detainer on Petitioner's confinement, prisoners' conditions of confinement and other issues arising in the execution of a term of imprisonment may be

4

challenged in a civil proceeding, but the instant petitioner does not allege that he exhausted the prison's administrative remedy process prior to filing the instant case. *See* 42 U.S.C. §1997e; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000) (dismissal without prejudice is appropriate if the plaintiff fails to demonstrate exhaustion). Even then, habeas relief must be founded on a cognizable claim, supported by the facts. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 86-87 (1976) (detainer which adversely affects a prisoner's eligibility for rehabilitative programs does not activate a due process right) .

Having concluded that the instant cause should be dismissed for the reasons aforestated, the Court will order dismissal, the dismissal to be without prejudice to the petitioner's bringing his claims against the INS and/or BOP at a later time and in the appropriate place.

## CONCLUSION

Accordingly, **IT IS ORDERED** that Abiodun Bashorun's petition for writ of habeas corpus is **DENIED**, the action is **DISMISSED**, and a separate Judgment shall be entered contemporaneously herewith.

This the 1st day of September , 2005.

Joseph M. Hood
JOSEPH M. HOOD, CHIEF JUDGE

Date of Entry and Service:

5